[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
In this case, Michael Johnson appeals from his conviction on a burglary charge. The charge against Johnson arose from a theft that occurred on November 14 or 15, 1997, at 560 Forest Park Drive, Apt. E. On those dates, Apt. E was leased to Antoinette Ashe, who lived in the apartment with her two-year old daughter, Mylae. Antoinette's boyfriend, Emilio Norvelle, (who was Mylae's father), also lived in the apartment. Michael Johnson lived in Apt. B in the same building, and a witness, Kim Talley, lived in Apt. D.
Friday, November 14, 1997, was Antoinette's birthday. Early that morning, Antoinette and Emilio left the apartment. Antoinette went to a hairdresser, and Emilio and Mylae went shopping for Antoinette's birthday gift. Around 3:00 p.m., Antoinette and Emilio met at Burger King. While they were at Burger King, they had a fight, and Emilio struck Antoinette. At that point, Antoinette asked Emilio to give her back the keys to the apartment. The couple then went their separate ways. This type of scene had apparently happened on a number of previous occasions. Later that day, Antoinette filed domestic violence charges with the police. She did not, however, return to her apartment until the following morning. On Friday afternoon around 1:45 p.m., Kim Talley came home and parked in front of her apartment. At that time, she saw Johnson and another man standing in front of Apt. B. Talley did not think this was unusual, as she had seen Johnson outside before. She said hello to Johnson and went inside her own apartment to get her dog. Talley then walked her dog for three or four minutes. When Talley came back to her apartment, she saw Johnson closing the door of Antoinette's apartment. Although Talley thought this was unusual, she assumed Johnson had been talking to someone inside the apartment. As a result, Talley did not call the police. Talley did not see Johnson carrying anything, nor could she see from where she stood if any damage had been done to the door.
On Saturday morning, Antoinette stopped at home on her way to work and found that her apartment door was open about an inch. The door was also broken. Because Antoinette was afraid someone might still be in the apartment, she went to a neighbor's apartment and called the police. After the police arrived on the scene, Antoinette discovered that several items were missing, including a diamond tennis bracelet, diamond earrings, a Rolex watch, a Sega Playstation, and a cordless flip phone. None of this property was ever recovered. The next day, Antoinette asked Talley if she had seen anything strange. Upon learning that Talley had seen someone leaving the apartment on Friday, Antoinette notified the police. After speaking to the police, Talley picked Johnson from a photo array as the person she had seen closing the door to Apt. E.
Following a jury trial, Johnson was convicted of burglary. On appeal, he raises the following assignments of error:
 I. The trial court erred by overruling Appellant's Criminal Rule 29 motion for acquittal at the close of the State's case because the evidence presented by the State was legally insufficient to sustain a conviction for burglary.
 II. The judgment of the trial court is against the manifest weight of the evidence and must therefore be reversed.
After reviewing the record, we find no error in the proceedings below and affirm the judgment of the trial court. A short discussion of our reasoning follows.
 I
As was noted above, the first assignment of error is based on the trial court's denial of Johnson's Crim.R. 29 motion for acquittal. In this context, Johnson argues that the jury verdict was based on speculation, since no one saw him inside the apartment and he was not found in possession of any stolen property. The State's response is that Johnson waived any error by failing to renew the motion for acquittal at the end of the defense case. Additionally, the State argues that even if the error can be considered under the plain error doctrine, sufficient direct and circumstantial evidence supports the verdict.
Under Crim.R. 29, trial courts must order a judgment of acquittal if the evidence is insufficient to sustain a conviction. However, if the defendant fails to renew a Crim.R. 29 motion for acquittal at the end of the evidence, any error, other than plain error, is waived. State v. Engle (April 25, 1997), Montgomery App. No. 15293, unreported. In the present case, Johnson moved the court for acquittal at the end of the State's case, but did not make a similar motion at the end of his own case. Accordingly, we conclude that Johnson waived any error in the trial court's failure to grant the motion for acquittal. Furthermore, we also find no plain error. Specifically, we are not convinced that the outcome of the trial would have been different but for the alleged error. Id. at p. 2.
Although the evidence in the present case was largely circumstantial, this is not fatal. We have previously said that circumstantial evidence is sufficient to prove the essential elements of a crime. State v. Hopfer, (1996),112 Ohio App.3d 521. The essential elements with respect to the crime of burglary are that:
 No person, by force, stealth, or deception, shall do any of the following:
* * *
 (3) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, with purpose to commit in the structure or separately secured or separately occupied portion of the structure any criminal offense.
R.C. 2911.12(A)(3). In order to find acquittal proper, the trial court would have had to conclude that the evidence was "of such little probative value that `reasonable minds must have had reasonable doubts' as to the accused's guilt. Hopfer,112 Ohio App. 3d at 557 (citations omitted).
We do not find that the evidence was of little probative value. The defense theory in this case was that Emilio Norvelle broke into the apartment and took property following his fight with Antoinette. We note that no evidence was presented to substantiate this theory, other than the fact that Norvelle and Ashe had a fight that day. Moreover, although some of Norvelle's property was stolen, his clothes were not taken. Further, while the defense theory is a possible explanation, the evidence indicated that nothing similar had occurred previously on the many occasions when Emilio and Antoinette fought. And finally, Norvelle and Ashe reconciled a few days after the theft, but none of the stolen property ever reappeared.
By the same token, the unrebutted evidence placed Johnson at the scene, closing the door to an apartment to which he had no right of access. In this regard, the testimony of Kim Talley was that when she arrived home on Friday, November 14, 1997, she saw Johnson and another man outside, in front of Apartment B. As we mentioned earlier, Talley walked her dog before leaving again. When Talley came out of her apartment with her dog, she saw the other individual who had been with Johnson open the door to Apt. B, peek out, and close the door. Talley then walked her dog for several minutes. When she went back to her apartment, she saw Johnson coming out of Apartment E (Ashe's apartment). Specifically, in this context, Talley's testimony during direct examination was as follows:
Q. You go back into your apartment?
A. Mmm Hmm.
 Q. That's number "D." Where, if any place, uh . . . is Mr. Johnson when you come around the corner?
 A. Uh . . . he's comin' [sic] out of Ms. Ashe apartment.
 Q. He's coming out of the apartment on the other side of you?
A. Yes.
 Q. Okay. Uh . . . what, if anything, does he say to you then?
A. Nothing.
During direct examination, Talley also testified that she had never seen Johnson come out of Apartment E before. On cross-examination, Talley did indicate that she did not actually see Johnson inside the apartment, but saw him pulling the door closed.
In view of the inferences that could be drawn from the evidence presented, we believe the trial court's failure to grant the motion for acquittal did not rise to the level of plain error. In fact, we do not think it was error at all, since sufficient evidence supported the conviction. Although a possible exculpatory explanation existed, reasonable minds could have found Johnson guilty beyond a reasonable doubt. In this regard, we stress that twelve jurors had an opportunity to assess the credibility and testimony of the witnesses. Accordingly, the first assignment of error is without merit and is overruled.
 II
In the second assignment of error, Johnson argues that his conviction was against the manifest weight of the evidence. As was noted by the Ohio Supreme Court in State v. Thompkins (1997),78 Ohio St.3d 380,387:
 Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."
For the reasons just mentioned in our discussion of the first assignment of error, we find that the greater amount of credible evidence supports the conviction. Again, while Johnson offered a possible theory of how Apt. E was robbed, ample evidence and the inferences to be drawn from the evidence, support the conviction. As a result, we find the second assignment of error without merit.
Based on the preceding discussion, both assignments of error are overruled and the judgment of the trial court is affirmed.
GRADY, P.J. and YOUNG, J., concur.
Copies mailed to:
Lynda K. Ashbery
Frank A. Malocu
Hon. James J. Gilvary